### GORDON v. HANNAMAN et al. (No. 1831.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 26, 1921. Rehearing Denied Nov. 23, 1921.)

1. **Limitation of actions** ⟜118(2)—**Negligent delay in issuance of process after filing pleadings prevents tolling of statute.**

Filing of a suit within the statutory period does not interrupt the running of the statute where plaintiffs negligently delay securing the issuance and service of process on the defendant.

2. **Limitation of actions** ⟜167(1)—**Debt and lien are no longer inseparable.**

Since the enactment of Vernon's Sayles' Ann. Civ. St. 1914, arts. 5693–5695, concerning limitation against foreclosure of liens, the debt and the lien securing it are no longer inseparable so far as the question of limitation is concerned, and the institution of a suit which prevents limitation against the debt does not necessarily preserve the right to foreclose the lien.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Limitation of actions ⬅==⟩167(2)—Negligent failure to issue process for title holder prevents suit from tolling statute against lien.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5695, barring suit to enforce lien securing debts executed subsequent to 1905, four years after such debts mature, the right to foreclose a trust deed lien is barred where a suit to recover on the note and foreclose the lien was filed within four years after maturity, and process was then served on the maker of the note, but the plaintiff negligently failed to have process issued and served on the holder of the title within the four-year period, since a suit could not be effective to foreclose the lien until the title holder was brought in.

**4. Liens ⬅==⟩23—Lien holder whose right is barred cannot redeem from sale under prior lien.**

The right of a holder, to redeem from sale under a prior lien does not give him a right to a conveyance of the premises on such redemption, but merely to redeem for the purpose of foreclosing his lien, so that a suit by such lienholder to redeem cannot be maintained after the right to foreclose his lien is barred by limitations.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by Bessie S. Hannaman against Sam Morris, John J. Gordon, and others, to recover the amount of a note and foreclose a trust deed securing it. Judgment for the plaintiff, and defendant John J. Gordon appeals. Judgment reversed and rendered as to appealing defendant.

C. E. Gustavus, of Amarillo, for appellant.
Kimbrough, Underwood & Jackson and J. N. Browning, all of Amarillo, for appellees.

BOYCE, J. Appellee, Bessie S. Hannaman, recovered judgment in the court below against Sam Morris, one of the defendants, for the sum of $13,591.10, with foreclosure of deed of trust lien against the said defendant, and also Sam Curtis and John J. Gordon, on certain property situated in the city of Amarillo. From this judgment defendant John J. Gordon appeals.

The only question for decision is as to the right of the plaintiff in the court below to enforce her deed of trust lien against the property in question as against the defendant John J. Gordon, and we make the following statement of facts and proceedings in the court below as being pertinent to the decision of such question: John Kollaer, being the owner of the property in question, conveyed it to Sam Morris on April 18, 1912, retaining a vendor's lien to secure payment of certain notes executed by Morris in part payment therefor. On January 30, 1913, Morris and wife gave a deed of trust on the property to secure the payment of a note executed by them, payable to Bessie S. Hanna-

man, the note being of even date with the deed of trust, and payable one year after date. This deed of trust was duly recorded. Sam Curtis, by regular transfer, acquired the unpaid vendor's lien notes executed by Morris to Kollaer, and on September 6, 1916, filed suit against Sam Morris and others to recover the balance due on these notes, and for a foreclosure of the vendor's lien on said property. Mrs. Hannaman was not made a party to this suit. Judgment of debt and foreclosure of lien was regularly obtained in this suit, and the property was sold to Sam Curtis under order of sale issued thereon. The sheriff's deed was dated December 20, 1916, and was duly recorded. Mrs. Hannaman and her attorney had notice of this foreclosure and purchase by Curtis at the time of the institution of the suit hereinafter mentioned. On January 28, 1918, Mrs. Hannaman filed this suit against Sam Morris and wife and Sam Curtis. Citation was properly issued and served on Morris and wife, but no process was issued for Curtis until February 10, 1920. The jury found, and the finding is not challenged, that the plaintiff or her attorney was "negligent in not causing process to be issued and served upon defendant Sam Curtis, earlier than was done."

No lis pendens notice of the filing of this suit was filed until some time in July or August, 1919. Sam Curtis, by deed dated May 1, 1919, recorded June 20, 1919, conveyed the property to John J. Gordon who, according to the unchallenged finding of the jury, purchased the property "in good faith and for a valuable consideration, without notice to him (or to his agent) of the existence of the deed of trust lien upon said property, in favor of the plaintiff, Bessie S. Hannaman, and without notice of the pendency of this suit." On February 10, 1920, Mrs. Hannaman filed her amended petition in this cause, making John J. Gordon a party to the suit, whereupon citations were immediately issued and promptly served on the defendants Curtis and Gordon. The amended petition set out the execution of the note and deed of trust, and prayed for a judgment for the debt and foreclosure of the lien. It was further alleged therein that the defendants Curtis and Gordon were claiming some sort of title to the property, covered by the deed of trust, which claim was alleged to be inferior and subject to plaintiff's lien. Curtis filed no answer, and judgment by default was taken against him. John J. Gordon answered, setting up the facts as we have detailed them, and pleading: (1) Limitation against the foreclosure of the lien as to him or Curtis; (2) that he was an innocent purchaser for value without notice of the Hannaman deed of trust or pendency of this

suit at the time of his purchase; and (3) that the plaintiff was estopped by reason of the failure to issue process for Curtis or file a lis pendens notice of such suit to enforce such lien against him, the said Gordon.

The plaintiff, in a supplemental petition, admitted the purchase of the property by Gordon, but tendered issues as to his being a bona fide purchaser without notice and as to the negligence in the matter of securing service of citation on the defendant Sam Curtis. She admitted in this pleading that the deed of trust lien was inferior to the vendor's lien through foreclosure of which the said Gordon held, but claimed the right to redeem the property, and in such connection tendered into court a sum of money sufficient to pay off all that was due on the Kollaer vendor's lien notes, and such taxes as had been paid by Curtis and Gordon, for the payment of which the court might hold her liable. Three special issues were submitted to the jury: (1) As to whether the defendant Gordon was a bona fide purchaser for value without notice of the existence of the deed of trust or the pendency of the suit to foreclose it; (2) as to the negligence of the plaintiff in procuring the issuance and service of process on the defendant Curtis; (3) as to whether plaintiff should be estopped from having a foreclosure of the deed of trust lien against the defendant Gordon. We have already stated the answers of the jury to the first two issues. The third issue was answered in the affirmative. The trial court entered judgment against Morris for the balance due on the notes and for a foreclosure of plaintiff's lien on the property as against all the defendants. It was further adjudged that the premises be redeemed "from the superior title and lien of the said John J. Gordon" by payment, out of the moneys paid by plaintiff into court for that purpose, of the amount due on the Kollaer vendor's lien notes, etc. The property was decreed to be sold, and the proceeds applied to the payment of plaintiff's debt and costs of suit. It was ordered that any balance remaining after such payment was to be paid to the defendant, John J. Gordon.

[1] The first question for determination is that of limitations. The suit was filed a few days before the note was barred, and as service was promptly had on Morris, the debt was thereby kept alive; but by reason of delay in the issuance of process for the defendant Curtis, attributable to plaintiff's fault, the suit is not to be considered as brought against him or the defendant Gordon, who had in the meantime brought the property, until February 10, 1920, more than four years after maturity of the note. Ricker v. Shoemaker, 81 Tex. 22, 16 S. W. 645; Wood v. Railway Co., 15 Tex. Civ. App. 322, 40 S. W. 24.

[2] If the case were to be decided under the law as it existed before the enactment of the legislation embodied in articles 5693 to 5695, Vernon's Sayles' Civil Statutes, the plea of limitations could not be sustained. Slaughter v. Owens, 60 Tex. 671; Bexar Building & Loan Association v. Newman, 25 S. W. 461; Ewell v. Daggs, 108 U. S. 143, 2 Sup. Ct. 408, 27 L. Ed. 682. The law then prescribed no limitations against such a lien. It was regarded as an incident of the debt, and followed successive renewals thereof, and could be enforced through the courts so long as the debt was alive and could be enforced; the right of foreclosure through trustee's sale could be exercised after the debt was barred because limitations was held merely to bar the remedy in the courts. But the legislation referred to (articles 5693 to 5695, Vernon's Sayles' Ann. Civ. St. 1914) prescribes a period of limitations against the lien itself. In article 5693 it was provided that no power of sale conferred by any deed of trust should be exercised after four years from the maturity of the indebtedness, and that "the lien created in such mortgages or deeds of trust shall cease to exist four years after maturity of the debt secured thereby." In article 5694 it is provided that the right to recover any real estate by virtue of a superior title retained in any deed or vendor's lien note should be barred after the expiration of four years from the maturity of such indebtedness, "and if suit is not brought for recovery of such real estate, or for the foreclosure of the lien to secure such * * * notes within four years from the date of the maturity of such indebtedness, or if suit is not brought within such time for the recovery of the land by the original vendor, or his transferee, or for the foreclosure of the lien given to secure such notes, the purchase money therefor shall be conclusively presumed to have been paid in any suit to recover such land or to enforce a lien thereon, and the lien reserved in any such notes and deeds conveying the land shall cease to exist four years after the note or notes have matured," etc.

In article 5695 it was provided that, when the date of maturity of indebtedness secured by a mortgage or deed of trust is extended in the manner provided therein, "the lien shall continue and be in force until four years after maturity of the notes as provided in such extension." This article further provides, and these are the specific provisions that control the decision of this case, that—

"The owners of all notes secured by deeds of trust or other liens, * * * executed subsequent to July 14, 1905, shall have four years after this act takes effect within which they may obtain such recorded extension as herein provided for, or bring suit to enforce the liens securing them if same are valid obligations and not already barred by the four years

statute of limitation when this act takes effect, and if such debt is not extended of record, or suit is not brought within such four years or four years after they mature, they shall be forever barred from the right to extend such debt of record, or bring suit to enforce the lien securing the same."

It is no longer true, we think, that the debt and lien are inseparable in the application of the law of limitations, and that whatever keeps the debt alive preserves the lien. Two cases may be cited as illustrating and sustaining this statement. Adams v. Harris, 190 S. W. 245; Henson v. Slaughter, 206 S. W. 375. In the case first cited the debt was kept alive, and was enforced, but the lien was held to be barred. In the other case the debt was barred but the lien was not. We think, under the provisions of the statute just quoted, a mere suit on the debt would not stop the running of limitations against the lien, only a suit to "enforce the lien" would have this effect.

[3] Now, while the suit as originally filed presumably sought an enforcement of the lien, Morris was really the only party thereto because of the fact that the suit could not be regarded as having been brought against Curtis until steps were taken to have him served with process. Curtis was a necessary party to the foreclosure suit. Clark v. Gregory, 87 Tex. 189, 27 S. W. 57; Ufford v. Wells, 52 Tex. 612; Buchanan v. Monroe, 22 Tex. 537; Jones on Mortgages, § 1404. He held the legal title and every interest in the land, subject only to the right of Mrs. Hannaman to redeem on foreclosure of her lien. Morris had no interest in the land, and perhaps, except for the necessity of the adjudication of debt, was not a necessary party to a foreclosure suit. Buchanan v. Monroe, 22 Tex. 537, 542; Jones on Mortgages, § 1404. The suit against Morris only preserved plaintiff's right to recover the debt, as the court could take no effective action in the foreclosure of the lien against him. There was no real suit to enforce the lien brought until all the real parties in interest, Curtis and Gordon, were brought in upon the filing of the amended petition on February 10, 1920, after which prompt service of citations were had on such parties. Under these circumstances we hold that limitations against the enforcement of the lien ran in favor of these defendants until the suit was brought against them. Linn & Lane Timber Co. v. U. S., 236 U. S. 574, 35 Sup. Ct. 440, 59 L. Ed. 725; U. S. v. Norris, 222 Fed. 14, 137 C. C. A. 552; Levy v. Wilcox, 96 Wis. 127, 70 N. W. 1109; Hiller v. Schulte, 184 Mo. App. 42, 167 S. W. 461; Badger Lumber Co. v. Staley, 141 Mo. App. 295, 125 S. W. 779; Dumphy v. Riddle, 86 Ill. 22, 25; Smith v. Hurd, 50 Minn. 503, 52 N. W. 922, 36 Am. St. Rep. 661; Union National Savings & Loan Association v. Helberg, 152 Ind. 139, 51 N. E. 17, 916; R. C. L.

p. 811, § 172; 25 Cyc. pp. 1302 and 1303. See, also, Meyer Bros. Drug Co. v. Fry, 48 S. W. 752.

The cases above cited deal with the application of various statutes of limitations against the enforcement of particular liens or rights, but we believe that there is such a close analogy between them and the one we have for decision that our conclusion is supported by these authorities. We refer to a few of the cases as illustrating the holdings. In the case of U. S. v. Norris a suit was brought by the government against the patentee of land to cancel the patent, the suit being brought within six years after the issuance of the patent. Before the suit was filed the patentee had conveyed the land by deed duly recorded, and the government, after the expiration of six years from the date of the issuance of patent, made this vendee a party to the suit. The vendee pleaded the statute of limitation, which read as follows:

"Suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of the patent." U. S. Comp. St. § 5114.

And it was held that the plea should be sustained. This ruling was in effect approved by the Supreme Court of the United States, in the case of Linn & Lane Timber Co. v. U. S., supra. In the case of Levy v. Wilcox, 96 Wis. 127, 70 N. W. 1109, the suit was brought to set aside a tax sale certificate. The law provided that every such suit should be brought within one year from the date of the sale. The suit was filed within the year, but the owner of the certificate, "the real party in interest," was not brought in until after the expiration of such period, and it was held that limitations had run in his favor. The other cases cited deal with suits to enforce mechanic's lien secured under statutes which provided a period of limitations for the institution of suits to enforce the lien, without specifying against whom the suits should be brought; and in various cases where suit was brought against the debtor and maker of the lien within the time limit, but others having an interest in the property to be affected by a foreclosure of the lien were not brought in until after the expiration of the time prescribed for the bringing of such suit, it was held that such persons so subsequently brought in were entitled to plead limitations against the enforcement of the lien.

[4] The appellee argues that her suit as against the defendants, Curtis and Gordon, was not a suit to foreclose, but a suit to redeem, and that the period of limitations applicable to the foreclosure of liens would not apply. We do not think this is a correct view of the matter. Mrs. Hannaman did not have the legal title to the premises, and

could not, by merely paying off the prior lien which had been foreclosed, acquire such title. She had a right to redeem from the prior sale, but that was merely incidental to a foreclosure of her own lien, and if she failed in the effort to foreclose her lien she had no right of redemption. The rights of the parties in ,the situation in which Mrs. Hannaman and Curtis were after the purchase by Curtis on foreclosure of the Kollaer vendor's lien notes is thus stated in Jones on Mortgages, § 1075:

"A junior incumbrancer, who, not having been made a party to a foreclosure of a prior mortgage, afterwards redeems, redeems not the premises strictly speaking, but the prior .incumbrance, and he is entitled not to a conveyance of the premises, but to an assignment of the security. Therefore, if the prior mortgagee in such case has become the purchaser at the foreclosure sale, and has thus acquired the equity of the .redemption of the mortgaged premises, the junior mortgagee, upon a redemption, is not entitled to a conveyance of the estate, but to an assignment of the prior mortgage. Whereupon the prior mortgagee, as owner of the equity of redemption, may, if he choose, pay the amount due upon the junior mortgage, redeeming that. The decree in such case would be that the junior mortgagee redeem the first mortgage; that the first mortgagee, as owner of the equity of redemption, redeem from the junior mortgagee, and, if he fail to do so, that the premises be sold, and out of the proceeds there be paid, (1) the first mortgage and interest; * * * (2) the remainder to the payment of the second mortgage and interest upon it, and in case there be a surplus this is to be paid to the first mortgagee as owner of the equity of redemption."

So that there necessarily must be a foreclosure of the second mortgage and decree of sale; and this is the relief which the plaintiff in this case sought and the relief which was granted in the decree entered in this case.

For the reasons above stated the appellant was entitled to judgment on the verdict of the jury, and it is unnecessary to consider what would be the rights of an innocent purchaser in the position of Gordon if a suit to foreclose the lien had been brought within the meaning of the statute, but no lis pendens notice of the filing thereof recorded.

The judgment as to the defendant Gordon will be reversed and rendered.